The next case on today's docket is the case People of the State of Illinois v. Charles Kilcauski, and we have Ms. Kelly Stacey for the appellant, and Maggie Hine for the appellee. Ms. Stacey. Thank you, Your Honors. Counsel, and please support. Hopefully the court has not yet tired of continued presence here and argument. This is another case that's a bit confounding, sort of like the last case. This case involves the trial court's dismissal of a felony count for failure to hold a preliminary hearing within 30 days, and then the state's subsequent not-across of the remaining misdemeanor count. A court order was entered that dismissed both counts without prejudice on August 8, 2013. Then on August 14, 2013, the defendant filed a pro se document with the court indicating that he was incarcerated at the St. Louis County Jail and that he was moving for a 120-day fast and speedy trial. In that motion, the defendant asked to have notice sent to the clerk, who he actually sent the document to, to Judge Middendorf, to St. Louis County Justice Services, and to himself. There's no official service anywhere on that document that the Clinton County State's Attorney's Office was ever served with the document, and there's no indication anywhere in the record that the state ever received a copy of the document or ever had notice where the defendant was being held or why he wasn't in court. The document was actually filed at a time the defendant was no longer in custody in the state of Illinois and at a time when no charges were pending in Clinton County due to the action of the trial court in dismissing the felony count. Then on July 17, 2014, the grand jury charged the defendant with the same counts that had previously been charged, and following that, the defendant filed a motion to dismiss under the Sixth Amendment constitutional right to speedy trial and the statutory right to speedy trial. At hearing on the defendant's motions, the court found that the sheriff of Clinton County transferred physical custody of the defendant to the state of Missouri. The state believes the court also erroneously found the defendant placed the state on notice that he was in custody in another jurisdiction. I believe the record... But the state already knew that. The state did not know that. How could the state not know that? They went to a... They were called for preliminary hearing, and the defendant was not produced. And it's like, okay, where is he? How could you say you didn't know that? I mean, two different hearings were set, and no defendant could show up because the sheriff let him go to Missouri. My understanding is that there was a warrant from Missouri. I believe that's somewhere in the record. But at the time of his dismissal, the dismissal was only based on the... Let's see here. Before the preliminary hearing, the sheriff of Clinton County transferred the defendant to the custody of the state of Missouri, where there was a warrant. Here's what's compounding the problem. And that's my problem, is on August 7th, the defendant had not returned from Missouri. The state was unable to produce the defendant for preliminary hearing, so the courts responded to dismiss the charges. The courts dismissed the charges. But the court also, if you read through the rest of the case, you will find once a defendant is out of the state of Illinois, the only way the state of Illinois can reach him is through a warrant. And this trial judge refused to issue a warrant. I see that. So my question to you is, once he was gone and the state of Illinois... Well, there was nothing to issue a warrant on because the state didn't issue any charges. So once he was gone, it seems to me that everything stopped. There was no more speedy trial, was there? There was no more speedy trial. There was no more custody. The state did not... There was no more custody. And that's another issue that's wrong with this court of order, because the judge found that physical custody only was transferred to Missouri, that he was still in legal custody in Illinois. But what was interesting to me is that he was released from Missouri, just released. He wasn't transferred back to Illinois. So it seems to me that Missouri didn't think he was being held for Illinois. Well, Missouri would have known there had been some charges pending because the defendant asked to have notice sent to the St. Louis County Justice Services. Except for the fact that Missouri released him. They didn't know. According to what I know... Because he wasn't released until after he served his sentence. Right. He was not back in Illinois until somewhere around July 17th of 2014. Oh, I thought it was March. I thought he said he got back in March of... Your Honor, maybe you're right about that date. But when the state... I mean, he was walking around when he got picked up. Yes, he was in Illinois when he got picked up. Right. And I believe that those things filter through like the police will spot somebody on the street. And eventually it filters up the channel to the state's attorney's office. Right. And they say, hey, we're going to go ahead and refile these charges. The other issue is that when there is a dismissal of charges based on lack of a preliminary hearing, that's a dismissal without prejudice. And that goes to this court's decision in People v. Roby, 5th District 1990 case, that it is a dismissal without prejudice. And the court made that clarification that this is a dismissal without prejudice. The problem in this case is the wrong test was applied. What was applied was the 6th Amendment constitutional speedy trial test when it should have been the 5th Amendment due process test. A case directly on point is People v. Totski. It's out of the 2nd District. And it's very similar to the case we have here. The Totski court reviewed United States and Supreme Court precedent and other precedent. They looked at Doggett v. United States and United States v. Marion. And the court held this. To constitute a due process violation, it must be shown that the delay between the crime and arrest or charge caused substantial prejudice to the defendant's right to a fair trial. And the delay was an intentional device to gain a tactical advantage over the accused. The court found both of those prongs had to be shown that there was substantial precedent, prejudice, and the intentional tactical maneuvering by the state, which we don't have here. The difference is pre-indictment delay falls under due process of the 5th Amendment, not 6th Amendment, not 6th Amendment speedy trial, constitutional speedy trial analysis. I thought Your Honor was going to ask a question. No, no, you stopped. I was sort of focused again. So the state believes what needs to happen here is a remand to the trial court. This obviously should not have been dismissed with prejudice, but it wound up being one. The state was deemed accountable for the release of the defendant. But I looked for any case law and anything else that would hold the state to that. And when it appears as though the sheriff sent this defendant to Missouri on a lawfully executed warrant, the sheriff did that. And the state may have found out later and apparently did find out later, but they didn't authorize it and they didn't have notice of it. And I think that is why the preliminary hearings are when there's a schism. So you're distinguishing imputed knowledge from prior knowledge and authorization? Yes, I think there is a big difference there. When do you believe the 120 days started in this case? I believe the 120 days had a start date because the defendant was arrested. What was that date? What date do you think it was? I do not recall off the top of my head what date that was. Well, do you think it was, let me make it easier, do you think it was when he was arrested on the information? I do. You do agree that it was? I believe a 120 day clock would have started when he was brought into trial and received the information. Yes. Well, then what happened? It was suspended? He was released. I believe that clock stops when he's no longer in custody in the state of Illinois. But what happens with the dismissal? I'm sorry, Your Honor. What happens with the dismissal? It's not the dismissal that triggers it. It's his removal from custody. Okay, so the charges are dismissed. There's nothing more to prosecute. That's correct. Why would there be the running of a 120 day rule? Well, the 120 day rule is not an issue in this case anymore because we didn't come anywhere near 120 days. We didn't reach anything under the interstate agreement on detainers either because there was no proper procedure done under that agreement. Sorry, Your Honor. Unless you want me to finish the thought there. Are you done? Thank you, Ms. Stacy. Thank you. Ms. Hine. May it please the Court. Counsel. My name is Maggie Hine and I'm representing the appellee, Mr. Charles Kalkowski. Now, Justice Cates, you had a lot of questions about why this custody is considered continued Illinois custody. And that's clearly what Judge Menendorf was relying on when he was making his Sixth Amendment and his 120 day analysis. And I think one way that we could think of this. I still don't have an answer, so I'm hoping you'll help me. Well, so I think one way to think of this is that the sheriff in this case, who is an agent of the state, he helped perpetrate an arrest on Illinois charges which were identical to the charges that were dismissed in this case. He did that on June 23, 2013. Mr. Kalkowski then remained in a local jail on these charges until the sheriff moved him to Missouri. Now, he was moved to Missouri on other charges, but there was no legal court. There was no notice to defense counsel. There was apparently no waiver of extradition by Mr. Kalkowski and no process surrounding this. So I don't see how the sheriff moving Mr. Kalkowski to Missouri is something that we would consider under normal procedures of sovereigns sharing custody of someone and not as though the sheriff simply moved him to St. Clair County Jail to wait on the Illinois charges. If he would have been moved with proper process, whatever it would have been, extradition, waiver, whatever, if he would have been moved from Illinois to Missouri, what do you believe would have happened with the 120-day rule? Would it have been suspended? Well, I think it's a little bit complicated. In the brief we cited to the cases, you know, there'd be the question of whether the defendant was in any way agreeing to the delay. So if he had agreed to the extradition, if defense counsel had, that would, of course, be a factor. But we did cite cases from Illinois where there's a movement between federal charges or between different counties where the court has said the 120-day clock isn't stopped, even though there's this voluntary moving of letting him go be prosecuted on another charge if the state's the one making that choice. And then there are two cases, one from Nebraska and one from Colorado, where it is the issue of a statutory speedy trial clock and the state letting the defendant be moved to a different state. And there the states were confronting the question of, well, do we still look under the in-custody version of our speedy trial statute or do we look under the out-of-custody speedy trial statute? And those courts determined that if we allow the defendant to remain with all of his liberty constrained and let the state make this decision, then we should still treat it as in-custody because the defendant is getting no benefit from that. It's just a way for the state to subvert this 120-day limit or the in-custody limit in those cases. But then the state dismisses the charges, and the court actually dismisses the charges for failure to comply with the preliminary hearing rule. So now the defendant has no more charges against him, and literally the state may never have brought them. There was no obligation of the state to bring them. So why are we counting days after the dismissal of the information on August 7th? Why are we continuing to count days? Why isn't it that the 120 days begins anew on July 17th, 2014? I think the larger answer to the question of why do we keep counting days is because the defendant's liberty continues to be restrained. By Illinois? I think Illinois created this problem by arresting him on the present charges, unilaterally transferring him, and then failing to proceed via indictment where it could have worked with the state of Missouri to try and come up with a more complicated factual scenario. I think by doing nothing, they left Mr. Kokowski sitting in custody through something that they caused by both an arrest on Illinois charges and a process-less transfer. So those are the facts that we're stuck with. He's in Missouri doing his own thing, whether it's a charge or whatever, probation violation. That doesn't impact Illinois at all. So he could have come back to Illinois as he did. He was released without any restrictions. Nobody called the Illinois Sheriff's Department and said, come get him. He's still yours. We have no evidence in the record that Illinois did anything that kept his custodial rights at issue. Well, so I think the first problem is that Illinois did make decisions that led to Mr. Kokowski sitting in custody for nine months. Which ones? So those decisions are arresting on the present charges and then moving him across the river without ever bringing him to court, getting leave of the court to do so. But just because if you've got people—and I hate to interrupt you, I'm sorry. But if you've got a defendant charged in two different states, there's no agreement or interstate agreement that I'm aware of that says one state gets to try the person before another state. I mean, very often a penalty is greater in another state. Say there's a robbery spree that would go from Illinois to Missouri to Tennessee, for example. Illinois may transfer that defendant to Tennessee because the charges were greater. Maybe they killed someone and never bring them back to Illinois because they're incarcerated. Are they still in custody, though, in Illinois? I think if we look at the statutory speedy trial issue, we do have the cases. And so we're relying on the cases where the prosecuting authority arrests, so it starts at 123 o'clock, then voluntarily relinquishes and drops charges. When those identical charges are later brought again, the courts look back to that original arrest date. So the only thing that distinguishes our case from those cases where the court says, yes, you stopped being—you know, St. Clair County stopped being the prosecuting authority, or the state of Illinois stopped being the prosecuting authority, and the federal authority became the prosecuting authority. They say, we're still going to look back to the original arrest date to start the 120 days. And the reason they do that is because you'd be able to subvert the statute by knowing that the defendant would remain in custody, and the fact that you're filing identical charges, there's no new evidence being gathered, there's no witnesses that have gone missing, there's no—you know, there's no reason beyond the fact that you can rely on this other authority to sort of extend his custody. So if you've done that initial arrest, even if the charges are dismissed, you still are potentially on the hook for that original arrest date if you're going to refile identical charges and not have a reason for doing so. So you take the original period of time, the original arrest date, until what date? Dismissal? So when the state refiles—so in this case, they refiled in July of 2014. Okay. And we look at the fact that these July 2014 charges are identical to the June 2013 charges. Right. So then the court asks, does the 120-day clock start when he's arrested on the 2014 charges, or do we look back to the June 2013 charges and instead see if he was brought within 120 days of that date, if he remained in someone's custody? I think that's how Stanix and Fostick proceed. So in this case, there is a difference in that in those cases, the state was choosing to null-probe the felony charges as well as the misdemeanor. But here, even though it was the trial court that dismissed charges without prejudice, because of the way that dismissal came about and because of the fact that the prosecutor could have avoided it is why we think it should be viewed analogously to the voluntary dismissal cases where the prosecutor is the one who makes the decision. I just don't understand how Illinois could have possibly brought him to trial within 120 days if he's in Missouri. I don't—I just don't understand that part of the argument. I mean, it was the state— How do you do that? I can't—I don't understand how you do that. So if the state had proceeded by indictment, they could have attempted to use the interstate agreement on detainers to put a detainer so that when the conviction was done but not the sentence in Missouri, they could have brought him back. And that might have been done within 120 days because his sentence in Missouri was obviously not that long. But could have, would have, should have doesn't make what did happen. I mean, just because you file for expedition back or to bring him back doesn't mean he's coming back. So do we keep the 120 days running? I mean, I just don't understand how we can do that if we can't force some other state to bring the individual back. I mean, to me, the answer to this question is when you arrest someone on charges in your state and you have a statutory, a speedy trial statute, you don't voluntarily give up control of that person until you figure out a process in your state. I know, but that's a nice argument, except it's unrealistic. It's unrealistic to argue that when you have people who go on killing sprees, for example, and, you know, you might want to do the death penalty in another state. Does that mean you can never bring back your Illinois charges if you decide to do that because 120 days is continuing to run while they're sitting in prison waiting a death penalty case? It doesn't compute with me. If the legislature wants to change the 120-day rule for specific instances, they can. And I think that the reality of the current day, and this was recognized way back in Smith v. Huey, is that governments do work together. They do figure out ways to transport defendants so that process can be followed in each case where they want to continue pursuing charges. Okay. All right. Thank you very much. Thank you, Ms. Fine. Ms. Stacy. I have the answer to the question on me. Oh, good. Let's see. On page 3 of the state's brief, we show here on June 24, 2013, the defendant appeared in court pro se. He was charged with obstructing justice, class 4 felony in count 1, and class A misdemeanor, unlawful possession of a hypodermic syringe in count 2. On June 24th, the trial court set bail in the amount of $20,000, appointed the public defender to represent the defendant. Then on June 25th, the public defender's office filed motions on behalf of the defendant. On July 3rd, the assistant state's attorney and public defender appeared in court, but the defendant failed to appear. So it sometime became those dates of June 24th and July 3rd that the defendant was sent to Missouri. I think a lot of things are wrong with this case. The Totski court, if I can refer back to that case, in the very first paragraph of the opinion, it says, The state contends the defendant's due process and speedy trial rights were not violated when it dismissed charges by Mollie Crossley, then waited 285 days to recharge her. We determine the trial court incorrectly applied the speedy trial test to the delay between the dismissal of charges by Mollie Cross and the filing of the new charge because due process is the only relevant consideration during such a period. That's what we have here. It's an issue of pre-indictment delay. It is not an issue of a statutory 120-day speedy trial right because the defendant was no longer in custody. Even if you want to argue the defendant was still in custody, criminal charges pending. It was the trial court's dismissal of the felony count for failure to hold a preliminary hearing within 30 days that triggered the state moving to dismiss the misdemeanor charge. I think you've got joint problems and all sorts of other can of worms that could be open then. The interstate agreement on detainers doesn't apply here because a detainer couldn't be lodged. Why could a detainer not be lodged? Because the trial court refused to issue a warrant to bring the defendant back to Illinois to be informed of what the new charges are. What needs to happen in this case? It needs to go back to the trial court. The trial court's room should be vacated. The matter should be remanded with directions to the trial court to apply the proper analysis on the pre-indictment delay. If the court wants to look at a speedy trial analysis, that's fine. But you cannot combine the two and conflict the issues, and that's what occurred here. That's what occurred in Totski. And if it's okay to have that time on a non-laprosse for the entire 285 days in Totski, certainly it is here when the state didn't do anything to trigger that rather than moving to dismiss the misdemeanor charge because the trial court dismissed the felony. We ask for you to reverse and remand with directions. Thank you, Your Honor. Thank you. Thank you, Ms. Bates. Thank you, Mr. Klein. Take the matter under advisement and render a ruling in due course.